# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**-vs-**                                              **Case No.  6:05-cr-157-Orl-31JGG**

**JERMAINE HAMILTON**

_____

## MEMORANDUM SENTENCING OPINION

The Court held a sentencing hearing in this case on March 9, 2006, at which the Defendant, Jermaine Hamilton ("Hamilton"), and the Government presented evidence and argument.  At the hearing, after briefly explaining its reasons, the Court imposed a sentence of thirty-six months, which is below the range established by the Federal Sentencing Guidelines.  This Order further explains the Court's reasoning for imposing that sentence.

## I.        Background

In August of 2005, a cooperating source ("CS"), at the behest of the Government, negotiated the purchase of some crack cocaine from Hamilton.  Hamilton claims that he was a mere go-between or "mule" for the CS's usual supplier.  Hamilton obtained a bag containing the crack from the supplier and delivered it to the CS in exchange for $1,800.[1]  Hamilton gave the money to the supplier and received $300 from him for his efforts.  The bag delivered by Hamilton to the CS contained 50.9 grams of crack cocaine.  One month later, Hamilton was arrested and charged with possession with intent to distribute more than fifty grams of cocaine base in violation of 21 U.S.C. sections 841(a)(1) and 841(b)(1)(A)(iii).

_____

[1] Hamilton claims he did not know how much cocaine was in the bag.

## II.    Analysis

Prior to the hearing on this matter, Hamilton filed a motion for a downward departure or an adjustment to the sentencing guidelines,[2] arguing that a number of factors weighed in favor of a lenient sentence, including: (1) the nature and characteristics of this particular offense; (2) his personal history and characteristics; (3) his admission of guilt and expression of remorse; (4) his assertion that he is not a danger to the public and not a threat as a repeat offender; and (5) the allegedly unreasonable disparity between sentences for powder and crack cocaine.  The Government opposed Hamilton's motion and reiterated its position that any sentence below the range established by the Guidelines is objectionable as unreasonable.[3]

A. *Booker* and the Federal Sentencing Guidelines[4]

As a result of the Supreme Court's opinion in *U.S. v. Booker*, 543 U.S. 220 (2005), the Federal Sentencing Guidelines became an advisory, rather than mandatory, system of sentencing.  *U.S. v. Talley*, 431 F.3d 784, 787 (11th Cir. 2005); *U.S. v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005). Although a "district court need not impose the sentence suggested by the Guidelines," *U.S. v. Gibson*,

---

[2] Construed as a motion for downward departure, this motion was denied.  However, the Court considered these arguments in the context of imposing an appropriate sentence.

[3] This is not the first time the Court has commented on the Government's stubborn adherence to this position.  For the Government to argue that any sentence below the Guideline range is per se unreasonable, it must also be true that a Guideline sentence is per se reasonable, which argument the Eleventh Circuit has explicitly rejected. *U.S. v. Talley*, 431 F.3d 784, 787 (11th Cir. 2005) ("We reject the argument of the United States that a sentence within the Guidelines range is per se reasonable").

[4] The Sentencing Guidelines were promulgated in order to reduce disparity and bring more uniformity to the sentencing process.  Some have questioned whether they have achieved this objective. *See, e.g.*, AMERICAN COLLEGE OF TRIAL LAWYERS, UNITED STATES SENTENCING GUIDELINES 2004: AN EXPERIMENT THAT HAS FAILED (2004); Albert W. Alschuler, *Disparity: The Normative and Empirical Failure of the Federal Guidelines*, 58 Stan. L. Rev. 85 (2005).

434 F.3d 1234, 1253 (11th Cir. 2006), it still must consult and take them into account when fashioning sentences. *Crawford*, 407 F.3d at 1178; *see also U.S. v. Scott*, 426 F.3d 1324, 1330 (11th Cir. 2005) (describing the consultation of the Guidelines as "inescapable").

Sentencing now requires two steps: first, the district court must consult the Guidelines and correctly calculate the range provided therein; second, the court must consider the factors listed in 18 U.S.C. section 3553(a) ("Section 3553(a)") and, after doing so, may impose a sentence that is either more lenient or more severe than provided for by the Guidelines, as long as that sentence is reasonable. *Talley*, 431 F.3d at 786; *Scott*, 426 F.3d at 1328-29 ("Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.") (internal citation and quotation omitted); *Crawford*, 407 F.3d at 1179. Clearly, then, district courts now have discretion in fashioning an appropriate sentence under the facts and circumstances of each case. *See U.S. v. Jimenez-Beltre*, --- F.3d ----, 2006 WL 562154 at *3 (1st Cir. Mar. 9, 2006) (district courts have discretion, post-*Booker*, to impose non-Guidelines sentences).[5]

The factors the district court is to consider include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing

---

[5] Because neither the Guidelines nor the policies on which they are based are mandatory, a district judge may therefore disagree with those policies and instead "apply his own perceptions of just punishment, deterrence, and protection of the public even when these differ from the perceptions of the Commission members who drew up the Guidelines." *Booker*, 543 U.S. at 305 and n.3 (*Scalia, J., dissenting*); *see also id*. at 300-301 (*Stephens, J., dissenting*) (noting that *Booker* decision instituted a discretionary sentencing regime).

Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

*Talley*, 431 F.3d at 786; *see also* 18 U.S.C. § 3553(a).  In fashioning a sentence, a district court need not engage in a detailed step-by-step analysis of the Section 3553(a) factors, nor must it even discuss each of those factors.  *U.S. v. Lockhart*, 2006 WL 318765 at *2 (11th Cir. Feb. 13, 2006); *Williams*, 435 F.3d at 1353-54; *Scott*, 426 F.3d at 1329.  Instead, it is sufficient for a court to acknowledge that it has considered the relevant arguments and the factors set forth in Section 3553(a).  *Scott*, 426 F.3d at 1330; *Talley*, 431 F.3d at 786.  In deviating from the Guidelines, however, a district court must set out its reasons for doing so.  *Gibson*, 434 F.3d at 1254 n.37; 18 U.S.C. § 3553(c).

B. Hamilton's Advisory Guidelines Sentence[6]

In this case, the Guidelines advise the imposition of a sentence of between seventy and eighty-seven months.[7]  This calculation is made as follows: (1) the base offense level for possession of more than fifty grams of crack cocaine is 32; (2) Hamilton qualified for the "safety valve" exception to the statutory mandatory  minimum and for a two-level reduction (under Guideline §§ 5C1.2 and 2D1.1(b)(7)), bringing him to an offense level of 30; (3) Hamilton qualified for a three-level reduction for acceptance of responsibility, thus arriving at a final offense level of 27; and (4) Hamilton has a criminal history category of I.  Thus, Hamilton faces a Guideline sentence of roughly between six and seven years.

_____

[6] Under 21 U.S.C. § 841(b)(1)(A)(iii), the mandatory minimum sentence applicable to the offense with which Hamilton was charged is ten years, with a maximum of life in prison.  However, Hamilton qualified for the safety valve, i.e., a sentence imposed without regard to the statutory mandatory minimum.  *See* 18 U.S.C. § 3553(f); *see also* USSG §§ 5C1.2, 2D1.1(b)(7).

[7] The Court addresses this factor first, pursuant to the law of this Circuit.  In addition, Section 3553(a)(4) directs the Court to consider the sentence advised by the Guidelines.

-4-

C. Applying the Section 3553(a) Factors

*1) Section 3553(a)(1)*

Section 3553(a)(1) directs the Court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).  In this case, Hamilton acted as a runner in a single drug transaction involving 50.9 grams of crack cocaine.[8]  Although he was aware that he was engaged in a drug transaction, he was unaware of the amount of drugs involved. Hamilton has only one prior criminal offense.[9]  There is no indication of any violence in his past, nor that he has a tendency toward violence.

Hamilton (28 years old) is a frail individual, standing 5'3" tall and weighing only 103 pounds. He has a congenital heart defect which has required multiple heart surgeries since age 8, and he still suffers chest pains as a result.  (Pre-Sentence Report, ¶ 31).  He lives with his paramour, with whom he has three children, and both he and his paramour are gainfully employed and work to support their family.  A lengthy sentence for a single, atypical, relatively minor offense would severely disrupt what

[8] It is notable that it was the Government that selected the amount of cocaine for this transaction.  It was probably no coincidence that the amount of crack involved exceeded (just barely) the fifty gram threshold for the harsher sentences imposed under 21 U.S.C. § 841(b)(1)(A).  Many commentators have recognized that the Sentencing Guidelines did not restrict judicial discretion so much as transfer it to federal prosecutors, agents, and investigators, who retain near-complete discretion regarding, for example, the quantities of contraband to be purchased in a sting or the charges to be brought against a particular defendant.  *See*, *e.g.*, Gerald W. Heaney, *The Reality of Guidelines Sentencing: No End to Disparity*, 28 Am. Crim. L. Rev. 161 (1991); *and* Jeffrey L. Fisher, Comment, *When Discretion Leads to Distortion: Recognizing Pre-Arrest Sentence Manipulation Claims Under the Federal Sentencing Guidelines*, 94 Mich. L. Rev. 2385 (1996); *and* Albert W. Alschuler, *Disparity: The Normative and Empirical Failure of the Federal Guidelines*, 58 Stan. L. Rev. 85 (2005).

[9] Over ten years ago, Hamilton pled *nolo contendere* to a drug possession charge and received a sentence of probation.

is, by all appearances, a solid and productive family situation.[10]  In the Court's judgment, these factors weigh heavily in favor of leniency.

*2) Section 3553(a)(2)(A)*

Under Section 3553(a)(2)(A), the Court considers the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  These concepts lend themselves to subjective interpretation. There are two basic considerations at issue here: first, the disparity in sentences between crack and powder cocaine; and, second, an application of the Section 3553(a)(2)(A) factors to the circumstances of this case.

The chemical compound $C_{17}H_{21}NO_4$ occurs naturally in the coca leaf.  This compound is usually processed for importation into the United States by dissolving the cocaine base in hydrochloric acid and water to create a salt: cocaine hydrochloride, $C_{17}H_{22}C1NO_4$ (powder cocaine).  Powder cocaine may then be converted back to its base form by cooking it with baking soda and water.  *See U.S. v. Sloan*, 97 F.3d 1378, 1381-82 (11th Cir. 1996).  In numerous trials before this Court, the Government's forensic chemists have testified that powder and crack cocaine are the same chemical substance, just in a different form.

Yet, there is a radical disparity in the fashioning of sentences imposed upon those defendants found guilty of crack cocaine offenses and those imposed upon defendants guilty of powder cocaine offenses.  For example, there is the "100 to1" powder to crack ratio, pursuant to which a defendant who has a certain quantity of crack will receive the same mandatory minimum sentence as a defendant

---

[10] Numerous members of Hamilton's extended family appeared in support of him at the sentencing hearing.

who has one hundred times that amount of powder cocaine. *See* 21 U.S.C. §§ 841(b)(1)(A), (b)(1)(B) (mandatory minimum sentences of ten and five years, respectively, imposed upon defendants for five kilograms of powder or fifty grams of crack cocaine (under (b)(1)(A)), and five hundred grams of powder or five grams of crack cocaine (under (b)(1)(B)). The Guidelines have incorporated this ratio, so that five kilograms of powder cocaine and fifty grams of crack cocaine are both scored at the same level.

This disparity has been widely criticized, and the United States Sentencing Commission itself has repeatedly suggested that a 20:1 ratio would be more appropriate.[11]  United States Sentencing Commission, "Fifteen Years of Guidelines Sentencing," 131-32 (Nov. 2004), *available at* http://www.ussc.gov/15_year/15year.htm.  The Sentencing Commission has also reported that many of the rationales originally relied upon to produce the disparity between powder and crack cocaine are unsupportable,[12] because: (1) the harms associated with crack do not justify a substantially harsher treatment; (2) the increased addictiveness of crack results not from a pharmacological difference

----

[11] The Sentencing Commission at one time suggested applying a 1:1 ratio, a suggestion that Congress rejected. *See U.S. v. Sloan*, 97 F.3d 1378, 1383 (11th Cir. 1996).  There is no indication that Congress has considered the Commission's 20:1 suggestion, and a number of courts have applied this ratio in fashioning sentences post-*Booker*. *See U.S. v. Perry*, 389 F. Supp. 2d 278, 307-308 (D.R.I. 2005); *U.S. v. Smith*, 359 F. Supp. 2d 771, 781-82 (E.D. Wis. 2005.); *U.S. v. Castillo*, 2005 WL 1214280 at *5 (S.D.N.Y. May 20, 2005); *U.S. v. Clay*, 2005 WL 1076243 at *6 (E.D. Tenn. May 6, 2005) (applying variance from 100:1 ratio).  Applying a 20:1 ratio in this case, the advisory sentence for one kilogram of powder cocaine (all other factors being equal), would fall within a range of thirty-seven and forty-six months, or almost half of the advisory sentence for Hamilton's crack cocaine-related offense.

[12] Congress amended the federal drug laws in response to growing concern over the use and abuse of crack cocaine, and relied upon a variety of rationales for doing so. *Sloan*, 97 F.3d at 1382. Those rationales include: (1) crack is more powerful and more dangerous; (2) crack has a more rapid onset of action and is more addictive; (3) crack can be sold in smaller quantities; and (4) crack is more easily available and less expensive.  *U.S. v. Terry*, 60 F.3d 1541, 1545 (11th Cir. 1995); *U.S. v. Harden*, 37 F.3d 595, 602 (11th Cir. 1994); *U.S. v. Byse*, 28 F.3d 1165, 1169 (11th Cir. 1994).

between it and powder cocaine, but from the differing manners in which the two drugs are normally used;[13] (3) the harms associated with crack are not as severe as initially feared and no more serious than those harms resulting from exposure to powder cocaine; (4) larger percentages of the defendants subject to the increased penalties do not fit the mold of serious or high-level traffickers that Congress intended to target when initially establishing those penalties, and instead, most crack cocaine offenders receiving these harsh penalties are low-level offenders; (5) crack cocaine is the only drug for which such harsh penalties are imposed on low-level offenders; and (6) high penalties for relatively small amounts of crack cocaine divert federal resources away from high-level traffickers toward low-level dealers.[14]  *Id.* at 132.  Finally, the  crack/powder disparity results in a disparate impact along racial lines, with black offenders suffering significantly harsher penalties.[15]  *Id.*

This arbitrary and discriminatory disparity between powder and crack cocaine implicates the Section 3553(a)(2)(A) factors.  Unless one assumes the penalties for powder cocaine are vastly too low, then the far-higher penalties for crack are at odds with the seriousness of the offense.  The absence of a logical rationale for such a disparity and its disproportionate impact on one historically

---

[13] Powder cocaine that is smoked is equally as addictive as crack, and injected powder cocaine is more addictive and more harmful than crack.   United States Sentencing Commission, "Fifteen Years of Guidelines Sentencing," 131-32 (Nov. 2004), *available at* http://www.ussc.gov/15_year/15year.htm.

[14] Congress' effort to reduce the trafficking of crack cocaine by imposing draconian penalties has clearly not worked.  In theory, the increased penalties and imprisonment imposed on crack dealers should limit the supply and increase the cost of crack cocaine relative to powder cocaine.  But, as the Government concedes, crack remains relatively inexpensive, even though it is derived from powder.

[15] Generally, powder cocaine is the drug of choice for white Americans, while crack is favored by black Americans.  Hamilton is black.

disfavored race promotes disrespect for the law and suggests that the resulting sentences are unjust.[16] Accordingly, these statutory factors weigh heavily against the imposition of a Guidelines sentence.

Moreover, given the isolated nature of this event and the lack of evidence suggesting that Hamilton is engaged in the drug trade beyond this case,[17] the amount of cocaine involved, and the amount of money he received, Hamilton stands on the lowest tier of the cocaine offender hierarchy. The Court simply cannot in good conscience find that sentencing Hamilton in strict accordance with the Guidelines  under these circumstances would either reflect the seriousness of his offense or justly punish him for it.[18]   A Guideline sentence would, instead, contribute to the disrespect in which many observers hold the federal drug and sentencing laws.  These factors convince the Court that a more lenient sentence than the one advised by the Guidelines is warranted.

3) *Sections 3553(a)(2)(B)-(D)*

The remaining pertinent factors include the need for the sentence to adequately deter criminal conduct, to protect the public from further crimes committed by the defendant, and to provide the defendant with the necessary training, care and treatment.[19]  *See* 18 U.S.C. §§ 3553(a)(2)(B), (C), (D).

---

[16] It is notable that, under the Guidelines, if crack were treated as the same chemical substance as powder cocaine (which it is), a 1:1 ratio would result in a sentencing range of only eight to fourteen months.

[17] There was a suggestion at the sentencing hearing that Hamilton was involved in other cocaine transactions, but there is no mention of such activity in the pre-sentence report; thus the Court places no weight on that suggestion.

[18] At the hearing on this matter, the Government stated that if the Court were to impose a sentence of only a few days below the Guidelines range, the Government would object (and, presumably, would list this case in its secret file on judges who impose sentences below the Guideline range, *see U.S. v. Williams*, 372 F. Supp. 2d 1338 n.7 (M.D. Fla. 2005)).

[19] Several of the Section 3553(a) factors are not pertinent to this case, such as avoiding unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)), and the need to provide restitution to

Clearly Congress has determined that deterrence for this type of offense is to be accomplished through the incarceration of offenders. *See* 21 U.S.C. § 841(b). The issue, therefore, is what amount of deterrence is necessary *in this case*. Hamilton testified, credibly so in the Court's opinion, that he was profoundly sorry for his actions, he has learned his lesson, and would not make the same mistake again. Thus, while a substantial term of incarceration is warranted as a deterrent to Hamilton and others, three years is ample under the circumstances. Further, although the Court doubts that the public requires much, if any, protection from Hamilton, incarceration will serve the purpose of removing Hamilton from the streets so that he will be unable to commit any similar offense (assuming he were so inclined) while incarcerated. Finally, while incarcerated, Hamilton will be able to avail himself of the various educational and vocational programs offered by the Bureau of Prisons. Thus, while incarceration is clearly justified, the Court finds that these goals are met by an incarceration of a lesser duration than that suggested by the Guidelines.

## III.    Conclusion

Congress, of course, has the responsibility to proscribe criminal conduct and establish the sentencing range for those who commit crimes against the United States. Congress has also enumerated the factors which the Court must take into account when imposing sentence. But the imposition of an appropriate sentence is a judicial function. It is the Court that is called upon to make the hard decisions necessary to integrate Congressional mandates with the requirements of justice,[20]

------

victims (18 U.S.C. § 3553(a)(7)), and thus the Court does not consider them here. Further, inasmuch as the only type of sentence available in this case is incarceration, the Court does not address 18 U.S.C. section 3553(a)(3) ("the kinds of sentences available").

[20] As stated in The Federalist Number 51: "Justice is the end of government. It is the end of civil society. It ever has been and ever will be pursued until it be obtained, or until liberty be lost in the pursuit." THE FEDERALIST NO. 51 (James Madison).

based on the facts and circumstances of each case that comes before it.  This requires the Court to exercise its discretion in consideration of <u>all</u> the statutory factors, not just the Guidelines.

But, notwithstanding *Booker* and recent Eleventh Circuit authority, the Government seeks to limit the Court's discretion to a consideration of the Guidelines only, ignoring the other sentencing factors.  In so doing, the Executive Branch oversteps the bounds of its Constitutional authority, by attempting to usurp the Court's traditional role in the sentencing process.

Attacks such as this on the independence of the judiciary are not new.  In his seminal work, "Democracy in America," Alexis DeTocqueville noted a tendency to diminish judicial authority in the United States.  He predicted that such attacks, if successful, would be attended with "fatal consequences," and predicted that "it will be found out at some future period that by thus lessening the independence of the judiciary they have attacked not only the judicial power, but the democratic republic itself."  Alexis DeTocqueville, DEMOCRACY IN AMERICA, Vol. I, Ch. XVI at 279 (Knopf ed. 1945; Everyman's Library, 1994, Ninth Printing).

Tension between the branches of our government is a natural consequence of human nature and was seen by our founding fathers as the foundation for the checks and balances built into our system of government.  As Madison said in Federalist Number 51, the security against a gradual concentration of the several powers in the same department, "consists in giving to those who administer each department the necessary constitutional means and personal motives to resist encroachments of the others."  THE FEDERALIST NO. 51 (James Madison).  Courts must therefore be allowed to exercise appropriate discretion in fashioning a just sentence.  Absent such discretion, the Court becomes nothing more than an arm of the other two branches of government.

Because more than 95 percent of all criminal prosecutions result in a guilty plea, sentencing is the most significant role played by the judiciary in the administration of our criminal justice system. Reducing the Court's role in sentencing to that of merely rubber-stamping the will of Congress as interpreted by the Executive Branch would sabotage one of the essential checks and balances envisioned by our founders.  In short, the pursuit of justice requires the meaningful participation of judges, lest DeTocqueville's warning come true.

There are certainly cases where a sentence within, or even above, the Guidelines would be appropriate.  This is not one of those cases.  Considering all of the relevant factors, including the sentence advised by the Guidelines, the nature of this offense, the circumstances of this case, and the characteristics of the Defendant, a sentence of thirty-six months is sufficient, but not greater than necessary, to satisfy the requirements of 18 U.S.C. § 3553.

**DATED** in Chambers in Orlando, Florida on March 16, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Jermaine Hamilton